IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In the Matter of: | ) | Case No. BK23-41052 |
| | ) | |
| DARCEE D. MILLER, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | **Opinion** |
| | ) | |

This matter came before the court for trial on July 9, 2024, on the debtor's objection to proof of claim #4, which claim was filed by her ex-husband Jeff Miller (Doc. #31). James C. Bocott appeared for the debtor Darcee Miller. Claude E. Berreckman, Jr., appeared for the claimant Jeff Miller. The objection to claim is granted in part. The debtor established she directly paid the claimant alimony and property settlement payments which are not reflected in the judgment records of the state court. Under Nebraska law it is appropriate the debtor receive a credit.

### Findings of Fact

The debtor and Mr. Miller married on September 13, 2000. The marriage lasted approximately 13 years, during which the parties accumulated significant marital debt. Their divorce was finalized on June 10, 2014. During the marriage two sons were born, the first in 2004, the second in 2008. Mr. Miller was granted physical custody of the boys.

The divorce decree does not award child support, but requires the parties equally pay the children's daycare and unreimbursed medical expenses. Child support was not awarded because the Millers wanted to attack their debt and wanted to make the debt payments affordable for the debtor. This arrangement was memorialized in the decree. It states no support was ordered because the parties had "significant debt", and they "have an agreed upon arrangement for the minor children". No evidence was offered as to any "agreed upon arrangement" outside the divorce decree and the settlement agreement upon which the decree was based. When asked whether the parties had discussions "regarding how to go forward with supporting your boys in the absence of a court ordered child support", Mr. Miller responded, "Not really".

Although child support was not awarded, alimony was. Under the decree, "[t]he [debtor] agrees to pay $600.00 per month alimony to [Mr. Miller] … for a total of 48 months. These funds will be used by [Mr. Miller] to pay on joint debt." After 48

months, the debtor was ordered to pay a property settlement judgment of $400 per month for 144 months, which payments the decree states are "considered payment on debt and not alimony".[1] Mr. Miller, whose background is in accounting, was ordered to provide an accounting of the parties' marital debt every three months. He only provided two accountings. But he refinanced the debt shortly after the divorce was final, releasing the debtor from liability for the marital debt.

Mr. Miller contends the debtor never paid any part of the alimony judgment or the property settlement judgment. The debtor contends she paid alimony and property settlement payments totaling $34,310 immediately before the entry of the divorce decree and the filing of her bankruptcy case.[2]

The debtor could not always afford to pay $600 in alimony every month. She testified the parties communicated about her inability to pay. Neither party provided details of the dates, times, places, or substance of any communications or side agreements regarding payments. The debtor testified she paid the claimant whatever she could afford. From the entry of the decree through March 2016, the debtor paid varying amounts approximately every two weeks, typically $300. In March 2016 she temporarily stopped making payments. She resumed payments in November 2016. But the payments were smaller. From November 2016 through August 3, 2023, the debtor typically paid $150 approximately every two weeks.

The debtor offered into evidence typed and handwritten ledgers of payments and copies of some, but not all the checks she paid Mr. Miller.[3] She did not explain why all the checks were not available. Mr. Miller does not dispute he received the checks offered into evidence. He disputes their purpose. He believed the payments were to support the boys. After the divorce, the boys primarily lived with Mr. Miller. The debtor had visitation every other weekend and six weeks in the summer. When

---

[1] The debtor testified the alimony payments were not to support Mr. Miller. They were to pay down marital debt. Neither party offered evidence as to why they agreed to characterize the first 48 payments as alimony. In her objection, the debtor did not request the payments be recharacterized as property settlement payments.

[2] The debtor seeks a credit for payments she made before the divorce decree. The parties agreed to the amount of the debt and the debt payments as part of their divorce decree. Presumably, the pre-judgment payments paid down the marital debt, thereby reducing what would have otherwise been a higher property settlement judgment. The debtor did not establish the contrary.

[3] The debtor lists the following checks (Check No., Date, and Amount) as paid to Mr. Miller but did not offer them into evidence: #1032, 7/16/2014, $300.00; #1059, 10/9/2014, $400, #1076, 1/2/2015, $870; #1078, 1/16/2015, $400; #1086, 3/3/2015, $400; #1087, 3/16/2015, $375; #1088, 4/1/2015, $400; #1089, 4/12/2015, $475; #1090, 4/12/2015, $475; #1093, 6/5/2015, $675; #1095, 6/19/2015, $475; and #1743, 8/26/2018, $225.

asked, "As you began to receive the payments, what did you understand those payments to be for?", Mr. Miller responded, "Bills, daycare, because I had primary custody." He believed a "significant portion" of the payments was for day care. He also testified:

> Q.     Do you believe Mr. Miller that the payments that Ms. Miller made to you throughout the years that are summarized under Doc. 63 - did those come close to paying anywhere near what you believe to be her share of the cost of supporting your boys?
>
> A.     No.

The parties spent considerable time disputing support of the boys.[4] Except for orthodontic bills paid by the debtor's parents, neither party quantified daycare expenses or unreimbursed medical expenses either paid. As to daycare, Mr. Miller testified generically - the expenses were "significant". But the boys were in school when the divorce was finalized. They only required after school daycare. No evidence was adduced as to who the day care provider was, how often the provider was used, the amount the provider charged, any amounts Mr. Miller paid, if and when the provider's services terminated, or whether at some point the older child watched the younger.

Mr. Miller offers several other reasons the payments should not be deemed alimony. The debtor did not pay the district court clerk. She paid Mr. Miller directly. The checks do not state "alimony" in the memo line. The debtor does not have a receipt stating alimony was paid. For her part, the debtor testified she reads the decree to mean she was required to pay Mr. Miller directly. It does not expressly require payments be made to the court clerk. The debtor was never told to pay the district court. She was never counseled not to pay Mr. Miller directly. She assumed she would get credit for payments, and Mr. Miller would handle the crediting.

As further support for his position, Mr. Miller testified he texted the debtor demanding payment. He did not have copies of the texts.[5] He also attempted to

---

[4] The parties disputed who paid medical bills. They disputed who paid health insurance. They disputed who paid for the boy's cars, camps, sports, electronics, and entertainment. But these disputes are not part of the claimant's claim. And they were never raised before the Nebraska state court. Other than the orthodontic bills, neither party produced a shred of probative evidence regarding amounts demanded, paid, or due for any expenses to be shared under the divorce decree.

[5] It is not clear whether the texts simply requested payment or whether they stated Mr. Miller's position he was never paid alimony.

collect the unpaid alimony judgment. In June 2018, after the final alimony payment came due, Mr. Miller hired a lawyer who demanded in writing the debtor begin making alimony payments. The debtor testified she did not receive the demands. Mr. Miller did not pursue collection efforts or a contempt action because he knew the debtor could not afford to pay.

In 2023, the debtor stopped paying Mr. Miller. Her last payment was on August 3, 2023. Mr. Miller retained new counsel who demanded payment of $59,632.13 in past due alimony and property settlement payments. Counsel offered a payment plan. The debtor did not agree. In late 2023 Mr. Miller garnished the debtor's wages and obtained just over $1,404.50. Shortly thereafter, on November 7, 2023, the debtor filed her bankruptcy petition. The garnishment was returned as preferential.

In the bankruptcy case Mr. Miller filed a proof of claim seeking a $60,209.04 claim with domestic support priority under 11 U.S.C. § 507(a)(1)(A). The claim included the alimony judgment in the amount of $31,862.05, including interest and the property settlement judgment of $28,346.99 including interest. Both were calculated as of January 16, 2024.[6] The judgment record for the property settlement states a balance due of $27,433.77, including principal of $26,000 and interest of $1,477.92. Interest on the property settlement judgment is 2.066% per year, or $1.47167 per day.

The debtor objected to the claim. In her objection the debtor seeks credit for the $34,310 she asserts she paid Mr. Miller. She seeks a credit for half of the over $20,000 in orthodontic expenses her parents paid. She also asserts the claim should be disallowed because Mr. Miller did not provide the required accountings and did not act "equitably".[7]

---

[6] Mr. Miller calculated his claim as of January 16, 2024, instead of the bankruptcy petition date. His filed claim also does not include future property settlement payments.

[7] The accounting allowed the debtor to monitor her indebtedness to joint creditors and ensure her obligations were decreasing. Mr. Miller asserts he did not provide accountings because they became unnecessary. Mr. Miller refinanced the marital debt shortly after the divorce decree was entered, relieving the debtor from any further obligation.

**Conclusions of Law**

A proof of claim filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). "The filing of an objection does not deprive the proof of claim of a presumptive validity unless the objection is supported by substantial evidence." *United States v. Austin (In re Austin)*, 583 B.R. 480, 483 (B.A.P. 8th Cir. 2018). "If, however, evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence.'" *Gran v. IRS (In re Gran)*, 964 F.2d 822, 827 (8th Cir. 1992); *see also FDIC v. Union Entities (In re Be-Mac Transp. Co.)*, 83 F.3d 1020, 1025 n.3 (8th Cir. 1996) ("Once an objection is made and the burden of overcoming the claim is met, the ultimate burden of persuasion always rests on the claimant."). Mr. Miller's claim is entitled to prima facie validity. It was timely and properly filed and included supporting documentation. But the debtor supported her objection with substantial evidence including copies of checks Mr. Miller does not dispute receiving.

Mr. Miller argues the payments cannot be alimony because they were not paid through the district court as required by Neb. Rev. Stat. § 42-369(1) (requiring payments for alimony "shall be made to the clerk of the district court (a) when the order, decree, or judgment is for spousal support, alimony, or maintenance support and the order, decree, or judgment does not also provide for child support."). The Nebraska Supreme Court rejected this argument on similar facts thirty-eight years ago.

> Petitioner has appealed, contending that because the decree of dissolution directed payments to be made through the clerk of the court, as provided for in Neb. Rev. Stat. § 42–369 (Reissue 1984), respondent should get no credit for payments made directly to the petitioner, as evidenced by respondent's canceled checks admittedly endorsed by the petitioner.
>
> ....
>
> The statute in question was designed to avoid this type of litigation. Had respondent followed its dictates, he would have avoided a great deal of time, trouble, and expense. However, the language of the statute, we believe, is only directory, not mandatory. The Legislature could not have intended that a plaintiff receive double recovery.

*Cotton v. Cotton*, 383 N.W.2d 739, 739–40 (Neb. 1986).[8] The debtor's direct payments to Mr. Miller do not disqualify their application to either the alimony judgment or the property settlement.

The debtor established the payments were for alimony. It was the legal obligation she owed Mr. Miller. Mr. Miller claims the payments were for support of the children and daycare expenses. His claim fails. Mr. Miller likely spent "significant" amounts supporting his children. His support does not convert the debtor's payments into support, which the debtor did not owe. The state court ordered, and Mr. Miller agreed, the debtor would not pay child support. Although the decree states the parties "have an agreed upon arrangement for the minor children," Mr. Miller denied any separate arrangement. This leaves us with only the parties' settlement agreement and divorce decree to define the debtor's obligations.

Mr. Miller characterized a portion of the payments as daycare expenses, which unlike child support was another legal obligation of the debtor. But Mr. Miller did not offer evidence of the amount he paid or the amount he asked the debtor to pay. He did not offer invoices from the daycare provider. He did not offer checks or bank statements evidencing his payments.

Mr. Miller's collection efforts in 2018 do not change the analysis. His efforts lend some support to his personal belief the debtor was not paying alimony. But a demand for payment does not change the debtor's legal obligations or the terms and effect of the divorce decree. Mr. Miller also did not explain why he accepted payments for four years without comment. Mr. Miller's position in 2018, after the final alimony payment came due, is inconsistent with his testimony the parties desired to attack their debt in an affordable way for the debtor. Construing the payments, which were often less than the required $600 per month, as support or daycare expenses, leaving a large alimony obligation, only drives the debtor deeper into debt.

The debtor's request to offset Mr. Miller's claim with orthodontic expenses paid by her parents is denied. Certain offsets are allowed under state law in domestic cases. *See, e.g., Davis v. Davis*, 660 N.W.2d 162, 167 (Neb. 2003) ("We determine that Gregory may offset the $11,773.94 owed to Juanita against the amount owed to him

---

[8] The Nebraska Supreme Court did not indicate which party had the burden of proof to credit direct payments. Presumably the burden is on the party seeking the credit, in this case the debtor. For an objection to claim in bankruptcy the ultimate burden of persuasion when the debtor produces significant evidence lies with the claimant, in this case Mr. Miller. To avoid any doubt, the court assumes the debtor has the burden of proof to establish the credit. She met her burden.

for Juanita's share of the marital debt and personal property."). The bankruptcy code also allows an offset of a mutual debt. *See* 11 U.S.C. § 553(a). But one of the required elements is the debt and claim are "mutual obligations". *Matter of Nickerson & Nickerson, Inc.*, 62 B.R. 83, 85 (Bankr. D. Neb. 1986). "[D]ebts are considered "mutual" only when "they are due to and from the same persons in the same capacity." *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009). The debtor did not establish mutuality regarding the orthodontic payments. The debtor's parents paid these expenses. The terms of the payment are not in evidence, leaving unanswered questions. Did the debtor's parents loan the debtor money expecting she would recover half from Mr. Miller? Did they pay the costs gratuitously? Mr. Miller alluded to a separate agreement with the debtor's parents. What were the terms?

Mr. Miller also contends it is "too late" to credit the payments. Assuming this to be a statute of limitations defense, it fails because the debtor's claim is defensive. *See* 54 C.J.S. Limitations of Actions § 80; *see also Ed Miller & Sons, Inc. v. Earl*, 502 N.W.2d 444, 452 (Neb. 1993) ("Unlike a counterclaim that seeks an affirmative judgment, the defense of recoupment is not barred by a statute of limitations."). The debtor asserts she paid the amounts due. She does not assert an independent cause of action. She seeks credit for payments she made. Her request to apply the payments is not barred by any statute of limitation.

The debtor's request Mr. Miller's claims be disallowed for equitable reasons is denied. Allowance of claims is governed by 11 U.S.C. § 502. A claim is allowed except for the specific reasons enumerated. *See* 11 U.S.C. § 502(b); *Reichel v. Jensen-Carter (In re Reichel)*, 645 B.R. 620, 625 (B.A.P. 8th Cir. 2022). The debtor did not establish any of the enumerated grounds. Disallowance is not appropriate.[9]

## Conclusion

The debtor's objection to claim is sustained in part. Mr. Miller has a general, unsecured claim for the unpaid amount of the property settlement judgment.[10] The debtor is entitled to credit to the alimony judgment for the payments she made to

---

[9] The court has the power to subordinate claims "under principles of equitable subordination." 11 U.S.C. § 510(c). The debtor did not request subordination. Even if she had, it is not appropriate in this case. "[E]quitable subordination is an unusual remedy which should be applied only in limited circumstances." *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.)*, 926 F.2d 1458, 1464 (5th Cir. 1991).

[10] During trial, the parties agreed the property settlement judgment is a general unsecured claim and is not entitled to priority under 11 U.S.C. § 507.

Mr. Miller, as evidenced by cancelled checks.[11] The total amount of post-judgment cancelled checks in evidence does not exceed the alimony judgment.

The debtor did not provide a calculation for crediting payments. Simply subtracting the payments from the judgment as of the date of the petition ignores the effect of judgment interest and would improperly inflate Mr. Miller's claim. Judgment interest in Nebraska is governed by Neb. Rev. Stat. § 45-103. Under Nebraska law a prevailing party is typically entitled to simple interest on a judgment. See *Meiergerd v. Qatalyst Corp.*, 7 N.W.3d 636, 642 (Neb. 2024) ("[I]n the absence of a contract or statute, compensation in the form of compound interest is generally not allowed to be computed upon a debt.").

A separate order will be entered detailing Mr. Miller's claim, including calculations.

Dated: July 22, 2024

BY THE COURT

/s/ Brian S. Kruse
Brian S. Kruse
Bankruptcy Judge

---

[11] The debtor's itemized recordkeeping of the payments was not sufficiently established to credit payments for which checks do not exist. The records raised some questions. The debtor conceded two checks (#1775 dated 11/30/2018, and #1624 dated 8/1/2022) were not paid to the claimant. Check #1775 was not on the debtor's itemized summary for 2018. But check #1624 was included in the debtor's total for 2022. Check #1052 referenced it was, in part, for daycare. Checks #1052, #1624, and #1775 are not credited to the judgment. The checks in footnotes 2 and 3 are also not credited to the judgment.